IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| WANDA KELLEY o/b/o B.F., a minor, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No: 1:14-cv-01009-STA-dkv |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER**

Plaintiff Wanda Kelley, as guardian of B.F., a minor, filed this action to obtain judicial review of Defendant Commissioner's final decision denying the application of B.F. for childhood Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act ("Act"). The application was denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on September 19, 2012. On October 18, 2012, the ALJ issued a decision, finding that B.F. was not entitled to benefits. The Appeals Council denied Plaintiff's request for review, and, thus, the decision of the ALJ became the Commissioner's final decision. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the

1

cause for a rehearing."[1] The court's review is limited to determining whether there is substantial evidence to support the Commissioner's decision[2] and whether the correct legal standards were applied.[3]

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] It is "more than a mere scintilla of evidence, but less than a preponderance."[5] The Commissioner, not the Court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly.[6] "[W]hen there is not substantial evidence to support one of the ALJ's factual findings and his decision therefore must be reversed, the appropriate remedy is not to award benefits. The case can be remanded under sentence four of 42 U.S.C. § 405(g) for further consideration."[7]

As a preliminary matter, the Court notes that the original record did not contain a transcript of the hearing held on September 12, 2012. Therefore, the Court ordered the Commissioner to file a statement clarifying whether a transcript of the hearing existed and, if it did exist, to supplement the record with a copy of that transcript. (ECF No. 19.) The

---

[1] 42 U.S.C. § 405(g).

[2] *Id.*

[3] *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).

[4] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)).

[5] *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[6] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997.

[7] *Faucher v. Secretary*, 17 F.3d 171, 175 (6th Cir. 1994).

Commissioner subsequently filed the supplemental transcript. (ECF No. 20.) Plaintiff then moved to either strike the supplemental transcript or for additional time to file a reply brief. (ECF No. 21.) The Court granted Plaintiff's motion to file a reply (ECF No. 22), and Plaintiff filed a reply on October 10, 2016. (ECF No. 23.) The matter is now ready for the Court's decision.

B.F. was born on September 4, 2002, and was a special education student in elementary school at all relevant times.[8] She alleges that she became disabled beginning October 21, 2010, when she was eight years old, due to attention deficit hyperactivity disorder ("ADHD") and mood disorder.[9] Because this is a childhood SSI claim, insured status is not in question. B.F's protective filing date is February 17, 2011.

The Welfare Reform Act amended certain provisions of the Social Security Act relating to SSI applications by children as follows:

> An individual under the age of 18 shall be considered disabled for purposes of this title if that individual has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted, or can be expected to last for a continuous period of not less than 12 months.[10]

The Social Security Administration ("SSA") promulgated final rules implementing this provision. The rules establish a three step sequential evaluation for determining childhood disability such that the SSA considers (1) whether the child is working; (2) whether the child has a medically determinable severe impairment which is expected to result in death, has lasted or is expected to last for a continuous period of not less than twelve months and, if so, (3) whether the

---

[8] (R. 159-178, 221-307, 317-356, ECF No. 10.)

[9] (*Id.* at 123, 153.)

[10] 42 U.S.C. § 1382c(a)(3)(C)(i).

impairment or combination of impairments meets, medically equals, or functionally equals the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").[11] A child will be found disabled if she has an impairment or combination of impairments which meet, equal, or functionally equal any impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1, Listing of Impairments.

Methods that may be used to determine whether an impairment is functionally equivalent to a listing include consideration of whether the child's impairment affects "broad areas of development or functioning" set forth in the regulations.[12] For children over three years of age, the areas of development or functioning (domains) that may be addressed in considering functional equivalence are: acquiring and using information; attending and completing tasks; interacting and relating with others; moving and manipulating objects; caring for yourself; and, health and well-being.[13]

Determination of functional equivalence to a listing entails determination as to whether a child meets the criteria for "marked" limitation in any two of the six domains, without comparison to any specific childhood listing or an "extreme" limitation in one domain.[14] A claimant has a "marked" limitation in a domain when her impairment(s) interferes "seriously" with her ability to independently initiate, sustain, or complete activities.[15] A claimant has an

---

[11] 20 C.F.R. § 416.924.

[12] 20 C.F.R. § 416.926a.

[13] *Id.*

[14] *Id.*

[15] *Id.*

4

"extreme" limitation in a domain when her impairment(s) interferes "very seriously" with her ability to independently initiate, sustain, or complete activities.[16]

The burden of proof at the listing level of the sequential evaluation is on the claimant. In order for a claimant to show that her impairment matches a listing, the impairment must meet all specified medical criteria.[17] "An impairment that manifests only some of those criteria, no matter how severely, does not qualify."[18] Additionally, "[f]or a claimant to qualify for benefits by showing that [her] unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, [s]he must present medical findings equal in severity to all the criteria for the one most similar impairment."[19] "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of [her] unlisted impairment or combination of impairments is as severe as that of a listed impairment."[20]

In the present case, the ALJ determined that B.F. has severe impairments of attention deficit hyperactivity disorder ("ADHD") and oppositional defiance disorder ("ODD") but does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments, and she does not functionally equal the listings. Therefore, B.F. was not disabled as defined in the Act since the date of the application. In reaching his decision, the ALJ considered all of B.F.'s medically determinably impairments, including any that were not found to be severe in all of the affected domains.

---

[16] *Id.*

[17] *Zebley v. Sullivan*, 493 U.S. 521, 530 (1990).

[18] *Id.* at 530.

[19] *Id.* at 531.

[20] *Id.*

Plaintiff contends that the ALJ erred (1) in finding that B.F.'s mental impairments were not disabling; (2) in dismissing the examining specialist reports, teacher statements, and psychological treatment records; (3) in failing to properly evaluate and set forth good reasons for the weight attributed to the opinion evidence, including dismissing B.F.'s guardian's testimony for improper reasons; (4) in finding that B.F.'s mental impairments failed to meet or equal a listing; and (5) in denying the claim without requiring substantial evidence to support the denial of benefits. Plaintiff's arguments are not persuasive.

As for her first argument that the ALJ should have found B.F.'s mental impairments to be disabling, Plaintiff points to the report of Dr. David Pickering, which she contends supports a finding that B.F. satisfies the criteria of Listing 112.04 (mood disorder) and 112.11 (ADHD).[21]

The criteria for Listing 112.04 are as follows:

112.04 Mood Disorders: Characterized by a disturbance of mood (referring to a prolonged emotion that colors the whole psychic life, generally involving either depression or elation), accompanied by a full or partial manic or depressive syndrome. The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one of the following:
1. Major depressive syndrome, characterized by at least five of the following, which must include either depressed or irritable mood or markedly diminished interest or pleasure:

>    a. Depressed or irritable mood; or
>    b. Markedly diminished interest or pleasure in almost all activities; or
>    c. Appetite or weight increase or decrease, or failure to make expected weight gains; or
>    d. Sleep disturbance; or
>    e. Psychomotor agitation or retardation; or
>    f. Fatigue or loss of energy; or
>    g. Feelings of worthlessness or guilt; or
>    h. Difficulty thinking or concentrating; or
>    i. Suicidal thoughts or acts; or
>    j. Hallucinations, delusions, or paranoid thinking;

or

---

[21] (Pickering Report, Exh. 10F, pp. 473-477, ECF No. 10.)

2. Manic syndrome, characterized by elevated, expansive, or irritable mood, and at least three of the following:

a. Increased activity or psychomotor agitation; or
b. Increased talkativeness or pressure of speech; or
c. Flight of ideas or subjectively experienced racing thoughts; or
d. Inflated self-esteem or grandiosity; or
e. Decreased need for sleep; or
f. Easy distractibility; or
g. Involvement in activities that have a high potential of painful consequences which are not recognized; or
h. Hallucinations, delusions, or paranoid thinking;

or

3. Bipolar or cyclothymic syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently or most recently characterized by the full or partial symptomatic picture of either or both syndromes);

and

B. For older infants and toddlers (age 1 to attainment of age 3), resulting in at least one of the appropriate age-group criteria in paragraph B1 of 112.02; or, for children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.[22]

Paragraph B(2) of 112.02 provides:

2. For children (age 3 to attainment of age 18), resulting in at least two of the following:

a. Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or

b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

---

[22] 20 C.F.R. part 404, subpart P, appendix 1, Listing 112.04.

c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or

d. Marked difficulties in maintaining concentration, persistence, or pace.[23]

Dr. Pickering's report identified manic syndrome, characterized by hyperactivity, pressure, of speech, flight of ideas, inflated self-esteem, decreased need for sleep, easy distractibility, and involvement in dangerous activities. The ALJ declined to adopt Dr. Pickering's findings because they were inconsistent with treatment records from Pathways and B.F.'s activities and were more restrictive than shown in the other evidence of record. Additionally, as the ALJ noted, there is no evidence showing that B.F.'s impairments meet all of the specific listing requirements for mood disorder or ADHD. Thus, the ALJ gave Dr. Pickering's report partial weight only.

Although B.F. has diagnoses of ADHD and occasional hyperactivity, there is minimal evidence to support a finding of mania. Dr. Pickering thought B.F. was "a little too happy," but B.F.'s guardian and her treating nurse practitioner, Jeanne Egan, never expressed such a concern.[24] Dr. Pickering described B.F.'s speech as "rapid" and her thought processes as "overly detailed, tangential, wandering, and ruminative,"[25] but Nurse Egan found B.F.'s speech and thought content to be appropriate.[26] Additionally, Dr. Pickering observed that B.F. was "calm

---

[23] 20 C.F.R. part 404, subpart P, appendix 1, Listing 112.02(B)(2).

[24] (R. 377-96, 441-87.)

[25] (*Id.* at 479.)

[26] (*Id.* at 377, 382, 385, 444, 448, 451, 455, 458, 463.)

8

and restrained," "quite withdrawn and shy," with no suggestion of manic disorder,[27] while one of B.F's teachers stated that B.F. "hardly speaks at all."[28] Accordingly, the ALJ could properly find that Plaintiff's claim that B.F. has manic disorder is not consistent with the evidence of record.

As the ALJ determined, the evidence does not establish marked impairment in two or more of the areas described in 112.02(B)(2). B.F. was an avid reader and able to communicate with others, which is inconsistent with a finding of marked impairment in communication and cognitive function.[29] B.F. was friendly, cooperative, enjoyed making friends, and did well at social activities, which is inconsistent with a finding of marked social impairment.[30] Although she worked below grade level, B.F. generally did well in school, suggesting no significant impairment in the areas of personal functioning or concentration, persistence, or pace.[31] And, Nurse Egan described B.F. as "happy, hyper, healthy."[32] Thus, Plaintiff has failed to meet her burden of establishing that B.F. meets all the requirements of Listing 112.04.

Next, Plaintiff contends that B.F. meets Listing 112.11. The criteria for Listing 112.11 are:

> 112.11 Attention Deficit Hyperactivity Disorder: Manifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

---

[27] (*Id.* at 475.)

[28] (*Id.* at 160.)

[29] (*Id.* at 500-01.)

[30] (*Id.* at 222, 248, 258, 283, 360, 372.)

[31] (*Id.* at 382, 385, 444, 463-64.)

[32] (*Id.* at 451.)

9

A. Medically documented findings of all three of the following:

1. Marked inattention; and
2. Marked impulsiveness; and
3. Marked hyperactivity;

and

B. For older infants and toddlers (age 1 to attainment of age 3), resulting in at least one of the appropriate age-group criteria in paragraph B1 of 112.02; or, for children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.[33]

As discussed above, although the evidence establishes some hyperactivity, the ALJ could properly find that the record does not contain evidence of marked inattention or impulsivity or that B.F.'s impairments result in at least two of the criteria in paragraph B2 of 112.02. Thus, Plaintiff has failed to demonstrate that B.F. meets the requirements of any listing.

Plaintiff also argues that the ALJ erred in failing to find that her impairments functionally equal a listed impairment. To determine whether an impairment is functionally equivalent to a listing and, therefore, severe enough to entitle a child to benefits, the ALJ must consider whether the child's impairment affects "broad areas of development of functioning."[34] If a child has an extreme limitation in one area of development or marked limitations in two domains of functioning, the impairment is considered functionally equivalent in severity to a listed impairment.[35] As noted above, the domains of functioning include (1) acquiring and using

---

[33] 20 C.F.R. part 404, subpart P, appendix 1, Listing 112.11.

[34] 20 C.F.R. § 416.926a.

[35] *Id.*

information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for one's self, and (6) physical well-being.[36]

Dr. Pickering found that B.F. had marked impairments in two domains – acquiring and using information and attending and completing tasks.[37] Therefore, Plaintiff reasons that B.F. meets the requirements for functional equivalence. However, the ALJ found that B.F. had less than marked limitation in acquiring and using information, attending and completing tasks, interacting and relating with others, self-care, and health and physical well-being and no impairment in moving and manipulating objects, and thus, she was not disabled.

The domain of acquiring and using information includes the ability to acquire and learn information, and use the information learned.[38] School age children should be able to learn to read, write, do math, discuss history and science, and use skills in daily living situations at home and in the community.[39] Dr. Pickering checked marked under this domain but with no narrative explanation to support the finding.[40]

In finding that B.F. had less than marked limitation in this domain, the ALJ pointed to the following evidence. B.F. has a full scale IQ of 81, placing her in the low average range of intelligence, and there was a significant difference between her verbal and performance capabilities.[41] B.F. completed most of her school work independently and responded well to

---

[36] *Id.*

[37] (R. 482.)

[38] 20 C.F.R. § 416.926a.

[39] *Id.*

[40] (R. 482.)

[41] (*Id.* at 360-61.)

11

one-on-one instruction.[42] Her teachers found slight difficulties with reading and comprehending written material, understanding vocabulary, and comprehending oral instructions, and she received reading instruction at her current grade level.[43] She was always promoted with her peers.[44] She read constantly and was able to comprehend math using a calculator.[45] Additionally, Nurse Egan described B.F. as a good student, doing well in school and even making the honor roll.[46] This evidence supports the finding that B.F. had some but less than marked limitation in acquiring and using information.

The domain of attending and completing tasks considers how well a child is able to focus and maintain attention and how well the child begins, carries through, and finishes activities, including the pace at which she performs.[47] A school-age child should be able to focus in order to follow directions, remember and organize school materials, and complete classroom and homework assignments.[48] A child should be able to sustain attention well enough to participate in group sports, read by herself, and complete family chores.[49]

---

[42] (*Id.* at 360.)

[43] (*Id.* at 160, 170, 500.)

[44] (*Id.* at 492.)

[45] (*Id.* at 160, 500.)

[46] (*Id.* at 382, 377, 385, 444, 448, 458, 464.)

[47] 20 C.F.R. § 416.926a.

[48] *Id.*

[49] *Id.*

12

Dr. Pickering opined that B.F. had marked limitations in this domain, again with no narrative explanation on the form to support his finding.[50] He described B.F.'s attention and concentration as short and distractible. However, the ALJ found less than marked limitations in this domain. B.F.'s teacher reported that she was never a distraction in the classroom and was able to complete most of her work independently.[51] B.F. was an avid reader, and she was able to focus on a daily television show.[52] Although the evidence shows some limitations, the ALJ could properly find that they were less than marked.

The ALJ's finding that B.F. had less than marked limitations in acquiring and using information and attending and completing tasks is supported by state agency psychologist Victor O'Bryan, Ph.D., who reviewed the file in April 2011 and opined that B.F. had less than marked limitations in these two domains.[53] After Plaintiff alleged that B.F. had developed a stuttering problem, Fawz Schoup, Ph.D., reviewed the file and found no medical evidence of record to support the added claim or otherwise show that B.F.'s condition had worsened since the previous finding of no disability in October 2010.[54] Dr. Schoup and Celia Gulbenk, M.D., and Patricia Allen, M.S., concurred that there was no finding of medical or functional equivalence.[55]

Also supporting the decision of the ALJ are the records from B.F.'s treating clinician, Nurse Egan, which show that, during the relevant time period, B.F. was oriented, with an intact

---

[50] (R. 482.)

[51] (*Id.* at 160-61.)

[52] (*Id.* at 500-01.)

[53] (*Id.* at 372.)

[54] (*Id.* at 409, 415-21.)

[55] (*Id.* at 416-21.)

13

memory, appropriate thought contact, neat appearance, pleasant affect, cooperative behavior, and appropriate speech.[56] Accordingly, the ALJ's finding is supported by substantial evidence.

Plaintiff contends that the ALJ should have considered evidence showing that B.F. was the victim of prenatal drug abuse.[57] However, the only evidence of prenatal drug exposure came from statements made to Dr. Pickering by Plaintiff.[58] There is no evidence that exposure to prenatal drug abuse affected B.F.'s level of functioning during the relevant period of October 21, 2010, through October 18, 2012.

"In assessing the medical evidence supplied in support of a claim, there are certain governing standards to which an ALJ must adhere."[59] In accordance with 20 C.F.R. § 416.927(c), an ALJ is required to evaluate medical opinions of record and explain the weight given to each opinion. Here, the ALJ explained the weight he gave to each of the opinions of record, considered the relationship between B.F. and the individual offering the opinion, the supportability of the opinion, and whether the opinion was consistent with the record as a whole as required by § 416.927(c).

The ALJ gave Dr. Pickering's opinions partial weight because they were not fully consistent with treatment records from Pathways or B.F.'s daily activities and abilities. The ALJ gave significant weight to the opinion of Dr. O'Bryan, explaining that his opinion was based on evidence that included B.F.'s test scores, teacher questionnaires, and daily activities. He gave less weight to Dr. O'Bryan's finding that B.F. had no limitation in health and physical well-being

---

[56] (*Id.* at 377-96, 441-72.)

[57] (*Id.* at 473-77.)

[58] (*Id.* at 478-79, 495.)

[59] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

14

because it was not supported by the record. The ALJ gave significant weight to the opinions of state agency consultants Dr. Gulbenk, Dr. Schoup, and Ms. Allen regarding B.F.'s limitations in the domains of acquiring and using information and attending and completing tasks. The ALJ gave little weight to Dr. Smith's opinion because it was vague and uncertain. Thus, Plaintiff's contention that the ALJ failed to specify the weight given to opinion evidence of record or explain the basis of weight given is without merit.

Social Security Ruling 96–7p requires the ALJ explain his credibility determinations such that it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."[60] "[B]lanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence."[61]

Here, the ALJ considered the statements of Plaintiff in finding that B.F. was not disabled. The ALJ noted that Plaintiff was not medically trained and, because of her relationship with B.F. and financial interest in seeing B.F. obtain benefits, she could not be considered a disinterested third party. Additionally, Plaintiff's statements were not consistent with the opinions and observations by clinicians. For example, Plaintiff asserted that medication was ineffective in addressing B.F.'s mental issues even though treatment records showed that B.F. benefitted from medication.[62] Plaintiff testified that B.F. did not understand anything at school, but the record

---

[60] *Id.* at 248 (citation and footnote omitted).

[61] *Id.*

[62] (*Id.* at 382, 387, 455, 463, 467-68, 470, 499.)

showed that B.F. was a good student.[63] Plaintiff testified that B.F. was unable to tie her shoes, dress, or bathe herself; however, in the function report, Plaintiff stated that B.F. could shower, bathe, brush her teeth, and dress herself.[64] These inconsistencies support the ALJ's decision to give Plaintiff's testimony little weight.[65]

Finally, Plaintiff argues that the ALJ did not develop the record. When the record contains a sufficient amount of evidence pertaining to an impairment, as in this case, an ALJ has no obligation to obtain an additional assessment.[66]

Because substantial evidence supports the ALJ's findings and the correct legal standards were applied, the decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED.**

s/ **S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: December 29, 2016.

---

[63] (*Id.* at 385, 444, 464, 495.)

[64] (*Id.* at 164. 200, 497-98.)

[65] In her reply brief, Plaintiff appears to contend that the ALJ rejected her testimony solely on the grounds of her lack of medical training and her financial interest in B.F.'s obtaining benefits. (Reply, p. 8, ECF No. 23.) However, as noted, the ALJ also relied on the inconsistencies between Plaintiff's testimony and other evidence in the record. (R. 17.)

[66] *See Culp v. Commissioner of Social Sec.*, 529 F. App'x 750, 751 (6th Cir. 2013) ("Given that the record contained a considerable amount of evidence pertaining to Culp's mental limitations …, the ALJ did not abuse her discretion by declining to obtain an additional assessment."). *C.f. Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality) (stating that an ALJ has a "duty to investigate the facts and develop the arguments both for and against granting benefits.")